CENTRAL ROIG REFINING CO. et al. v.
SECRETARY OF AGRICULTURE (POR-
TO RICAN AMERICAN SUGAR REFIN-
ERY, Inc., et al., Intervenors).

No. 9769.

United States Court of Appeals
District of Columbia Circuit.

Argued Oct. 6, 1948.

Decided Nov. 24, 1948.

Mr. Frederic P. Lee, of Washington, D. C., for appellants.

Mr. James A. Doyle, Associate Solicitor, of Omaha, Neb., Department of Agriculture, of the Bar of the Supreme Court of Nebraska, pro hac vice by special leave of court, with whom Messrs. George Morris Fay, U. S. Atty., of Washington, D. C., and J. Stephen Doyle, Jr., Special Asst. to the Atty. Gen., were on the brief, for appellee. Messrs. Sidney S. Sachs and John D. Lane, Asst. U. S. Attys. both of Washington, D. C., also entered appearances for appellee.

Messrs. Arthur L. Quinn, of Washington, D. C., and Orlando J. Antonsanti, of San Juan, P. R., with whom Mr. Gordon P. Peyton, of Washington, D. C., was on the brief, for intervenor Portó Rican American Sugar Refinery, Inc., urging affirmance. Mr. Dean G. Acheson, of Washington, D. C., with whom Mr. Donald Hiss, of Washington, D. C., was on the brief for intervenors American Sugar Refining Company, et al., urging affirmance.

Mr. Walton Hamilton, with whom Mr. Thurman Arnold, of Washington, D. C., was on the brief, for intervenor Government of Puerto Rico, urging reversal. Mr. Abe Fortas, of Washington, D. C., also entered an appearance for intervenor Government of Puerto Rico.

Before EDGERTON, CLARK, and WILBUR K. MILLER, Circuit Judges.

EDGERTON, Circuit Judge.

Section 207(b) of the Sugar Act of 1948 provides that "Not more than one hundred and twenty-six thousand and thirty-three short tons, raw value, of the quota for Puerto Rico for any calendar year may be filled by direct-consumption sugar." 61 Stat. 922, 927, 7 U.S.C.A. § 1117(b). "The quota for Puerto Rico" means the quantity of sugar that may be imported into continental United States from Puerto Rico. "Direct-consumption sugar" means, approximately, refined sugar.

Section 205(a) of the Act provides that whenever the Secretary of Agriculture "finds that the allotment of any quota, or proration thereof, * * * is necessary to * * * prevent disorderly marketing * * * or to afford all interested persons an equitable opportunity to market sugar * * * he shall [allot] to persons who market or import sugar * * * the quantities * * * which each such person may market in continental United States * * * for consumption therein. Allotments shall be made in such manner and in such amounts as to provide a fair, efficient, and equitable distribution of such quota * * *, by taking into consideration the processings of sugar or liquid sugar from sugar beets or sugarcane to which proportionate shares, determined pursuant to the provisions of subsection (b) of section 302, pertained;[1] the past marketings or importations of each such person; and the ability of such person to market or import that portion of such quota * * * allotted to him." If, then, allotments are made at all, they "shall be made * * * by taking into consideration" three factors or standards; (1) processings of "proportionate shares" sugar, (2) "past marketings," and (3) "ability * * * to market".

Much more direct-consumption sugar is on the market in Puerto Rico than the 126,033 tons that § 207(b) permits to be imported into the United States. In Puerto Rico Sugar Order 18, 13 Fed.Reg. 310, 313, the Secretary concluded "(1) that the allotment of the direct-consumption portion of the 1948 sugar quota for Puerto Rico is necessary to prevent disorderly marketing of such sugar and to afford all

---

[1] This means sugar from sugar beets or sugarcane not exceeding the producing farm's proportionate share of the quantity required to be processed to enable the producing area to meet its quota. § 301(b).

interested persons an equitable opportunity to market such sugar in the continental United States; (2) that in order to make a fair, efficient, and equitable distribution of the direct-consumption portion of such quota, as required by section 205(a) of the act, allotments should be made by giving equal weight to (a) past marketings, measured by the average of the highest five years of such marketings by each refiner during the period 1935-1941, inclusive, and (b) ability to market, measured by the highest single year's marketings during the period 1935-1947, inclusive." The order allots direct-consumption sugar, among refiners operating in Puerto Rico, in accordance with these views.

The appellants, two refiners operating in Puerto Rico, bring the order here on appeal under § 205 of the Act. They contend that the order discriminates against them in violation of the Act and of the Constitution. They attack the constitutionality of § 207(b) and the alleged compliance of the order with § 205(a). Porto Rican American Sugar Refinery, Inc., to which the order is very favorable, intervenes in its support. The Government of Puerto Rico intervenes to attack the constitutionality of § 207(b). The American Sugar Refining Company and other mainland refiners intervene to defend its constitutionality.

■ Though the order purports to give effect to "ability to market" we think it fails to do so. The Secretary argues that "in fairness to those refiners on whom the impact of war was greatest, it is considered fair and reasonable to select a prewar year as a proper measure of their ability. Therefore, the best single year's performance during the past 13 years is deemed to afford a fair and equitable measure of the ability of each refiner to market direct-consumption sugar." We cannot follow this argument. Performance in the 12 years before 1947 has nothing to do with ability to market in 1948. The Secretary's argument undertakes to equate each refiner's ability to market with the right to market that the Secretary thinks the refiner ought, as a matter of fairness, to have. By requiring the Secretary to take into consideration ability to market, Congress foreclosed the question whether wartime dislocations made it unfair to do so. Actual performance may be, as the order says, a better measure of ability to market than plant capacity. But since the ability to be measured is current ability, if performance is to be the measure it must be current performance.

■ We think the order also fails to give effect to "past marketings." "Past marketings," as that term is used in the Act, plainly includes marketings within the last half-dozen years or at least the more recent of them.[2] It is doubtful whether the term includes anything else. As of 1948, the average of the highest five years during the period 1935-1941 is, in our opinion, no measure of "past marketings." In excluding the six years 1942-1947 the order fails to comply with the Act.

■ The order does not even purport to give effect to "processings * * * to which proportionate shares * * * pertained." The Secretary thought this standard "not applicable" for the following reasons. In his opinion the processings to which it refers are processings of sugarcane into raw sugar and do not include the processing of raw into refined sugar.[3] Raw sugar "must be refined to produce what is commonly referred to as direct-consumption sugar. The three largest refiners in Puerto Rico (Puerto Rican American, Roig, and Igualdad) do not process raw sugar from sugarcane, but instead obtain their raw supplies from affiliated mills or from completely independent sources * * *."[4] No doubt facts of this sort may be considered in determining

---

[2] Cf. "There is no merit in the contention that restricting consideration of past marketings to the preceding four years arbitrarily discriminated against those whose marketing experience antedated that period." Gay Union Corporation v. Wallace, 71 App.D.C. 382, 388, 112 F.2d 192, 198 certiorari denied 310 U.S. 647, 60 S.Ct. 1098, 84 L.Ed. 1414.

[3] This construction is certainly a legitimate one but is not, we think, the only possible one.

[4] The Secretary added: "Furthermore, the use of this standard would make all of the raw sugar mills in Puerto Rico eligible for an allotment of direct-consumption sugar, although the great majority of these mills do not make refined

how much weight should be given to processings of proportionate-shares sugar. In our opinion they cannot justify refusal to give this standard any weight at all. If § 205(a) merely directed the Secretary, in making allotments, to give consideration to the several standards, his view that he need not give weight to all of them might perhaps be tenable. But it directs him to make allotments *by* taking into consideration the several standards. In our opinion this cannot be done without giving some effect to each. Any possible doubt as to the intention of Congress in this respect seems to us to be removed by the fact that in the Sugar Act of 1948 [5] Congress changed the word "or" [6] to "and," after this court had expressly held that the word "or" in the 1937 act justified the Secretary in denying effect to one of the three standards.[7]

■ We take these to be "questions of law" concerning which the Sugar Act requires us to review the Secretary's order. We must therefore reverse it and remand the case to him. A majority of the court are of opinion that since the order is not authorized by the Act we cannot, within established principles of review, undertake to decide whether § 207(b) of the Act is authorized by the Constitution. All agree that this question has been fully argued, and my own view is that we should decide it.

· Reversed.

---

sugar which constitutes the bulk of the Puerto Rican *direct-consumption sugar.*" We think this erroneous. Section 205(a) provides for allotments "to persons who market or import sugar"; meaning, evidently, persons who market or import the sort of sugar that is to be allotted. No allotment need be made to other persons.

[5] 7 U.S.C.A. § 1100 et seq.

[6] before "the ability of such person to market * * *." 50 Stat. 906, 7 U.S. C.A. § 1115(a).

[7] Gay Union Corporation v. Wallace, supra, Note 2.